IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT FREEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-00990 |
| v. ) | Judge Sharp / Knowles |
| ) | Jury Demand |
| SOUTHERN HEALTH PARTNERS, et. al, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Southern Health Partners, Inc. ("Defendant" or "Southern Health"). Docket No. 41. Along with that Motion, Defendant has filed a supporting Memorandum of Law, a Concise Statement of Undisputed Facts, and the Affidavits of Krystal Souders and Sonya Troutt. Docket Nos. 41-1 - 41-3, 42.

Plaintiff has not responded to Defendant's Motion or Concise Statement of Undisputed Facts, nor has Plaintiff filed his own Statement of Undisputed Facts.

Plaintiff, an inmate housed at the Sumner County Jail at all times relevant to the case at bar, filed this pro se, in forma pauperis action, pursuant to 42 U.S.C. § 1983, generally alleging that Defendant is failing to provide safe, sanitary Jail conditions and is engaging in malpractice in its medical procedures, in violation of the Eighth Amendment rights of the inmates at the Sumner County Jail. Docket No. 1. Plaintiff seeks compensatory and punitive damages. *Id.*

Defendant Southern Health Partners filed the instant Motion for Summary Judgment on July 10, 2013, alleging that it is entitled to a judgment as a matter of law because: (1) Plaintiff

can provide no evidence that it was deliberately indifferent to a serious medical need of his; (2) respondeat superior is not a basis for the imposition of liability under § 1983, and Plaintiff has failed to show that his alleged constitutional violations resulted from a custom, practice, or policy of Defendant; and (3) Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997(e)(a). Docket No. 49.

For the reasons discussed below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

## II. Facts[1]

Krystal Souders, R.N., obtained her LPN degree from Bevill State Community College, in Hamilton Alabama, in 1994, and her BSN degree from Excelsior University in New Albany, New York, in 2012. Docket No. 41-2, Affidavit of Krystal Souders ("Souders Aff."), ¶ 2. Nurse Souders has been licensed as a nurse by the State of Tennessee since approximately 1994. *Id.* At the time of her Affidavit, she had been employed by Defendant for approximately nine years and eight months. *Id.* In the course of her employment with Defendant, she has been assigned as the Medical Team Administrator at two jail facilities. *Id.* She has also been employed by Defendant as a Regional Administrator and a Regional Director, and was then-currently a Vice President of Operations over Defendant's jail facilities in Texas, Mississippi, Tennessee, and parts of Kentucky. *Id.*

Health care in the Sumner County Jail ("Jail") is provided under the direction of a Medical Team Administrator ("MTA"), as well as a Medical Director ("MD"). *Id.*, ¶ 3. During the time of which Plaintiff complains, Amy Cline, R.N., was the MTA and Dr. Kenneth

---

[1] The following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

2

Mathews was the MD. *Id.*

All nurses employed by Defendant who work at the Jail meet all of the criteria for licensed nurses in the State of Tennessee, and are duly licensed by the State of Tennessee. *Id.*, ¶ 16.

During all times relevant to this lawsuit, it has been Defendant's policy that when an inmate is booked into the Sumner County Jail, he or she is administered an intake / receiving screening by Jail personnel at the time of commitment, or within twenty-four hours of commitment. *Id.*, ¶ 8. At that time, inmates are asked questions about current illnesses, health problems, and conditions. *Id.* Observations are noted about the inmate's behavior, body deformities, and general physical and mental condition. *Id.* The intake / screening forms are forwarded to Defendant's medical staff for review. *Id.*

During all times relevant to this lawsuit, it has been Defendant's policy that every inmate at the Jail is screened and tested for tuberculosis ("TB") at intake. *Id.*, ¶ 18. It takes several days for the results of the TB tests to be received. *Id.* Until the test results are received, all inmates who deny prior exposure to TB are housed in the general population. *Id.* If an inmate admits prior exposure, he / she is medically segregated until results are received. *Id.* Any inmate who tests positive for TB exposure is medically segregated from the general population, and a chest x-ray is performed to screen for active disease. *Id.* If the inmate is found to have an active case of TB, then the inmate will be removed from the Jail facility all together. *Id.*

Inmates with injuries are treated immediately upon commitment. *Id.*, ¶ 8. Inmates are also screened for psychiatric illnesses at this time. *Id.* In the case of acute illness (such ass suicide), the inmate will be housed under close observation and referred for mental health

3

treatment to a Psych RN or Psychiatrist.  *Id.*

During all times relevant to this lawsuit, it has been Defendant's policy that within fourteen days of commitment, all inmates receive a complete history and physical examination, performed by Defendant's trained, authorized, and licensed medical staff.  *Id.*, ¶ 9.  All medical history and physicals are referred to the MD for review.  *Id.*  Special needs are identified, and ongoing treatment care plans are established.  *Id.*  Chronic care inmates are referred to a physician, and laboratory or diagnostic testing is ordered, if needed.  *Id.*

During all times relevant to this lawsuit, it has been Defendant's policy that all inmates have the opportunity daily to request health care.  *Id.*, ¶ 10.  If an inmate requires routine medical care, he or she obtains an inmate Sick Call Slip from the corrections officer on duty in the housing unit and that slip is provided to the medical staff for action.  *Id.*  Routine sick calls are conducted by medical staff inside the housing unit. *Id.*

During all times relevant to this lawsuit, it has been Defendant's policy to charge $5.00 per visit for inmate sick call visits.  *Id.*, ¶ 21.  The medical charges for each inmate are submitted to the Jail administration, who debits the payment from the inmate's commissary account.  *Id.*  Defendant has not submitted fraudulent charges to the Jail for inmate medical care.  *Id.*

Plaintiff received medical attention in response to every Sick Call Slip he submitted, for every medical complaint that he made.  *Id.*, ¶ 22.

Nurses at the Jail are not authorized to prescribe medication.  *Id.*, ¶ 24.  Therefore, all requests for medication (including those of Plaintiff) were forwarded to the MD, whose prescribing and dosage instructions were followed by medical personnel at the Jail.  *Id.*  During all times relevant to this lawsuit, it has been Defendant's policy that medication in the Jail is

4

provided to inmates only by medical staff.  *Id.*, ¶ 11.  The nurse on duty is accompanied by a corrections officer to each "pod" (inmate common area).  *Id.*  The nurse stands at the door, but does not enter the pod.  *Id.*  Inmates due to receive medication form a line, each holding a cup of water.  *Id.*  As each inmate's name is called, he or she approaches the nurse, identifies himself or herself, and is provided medication by the nurse.  *Id.*  The inmate must take the medication in the nurse's presence.  *Id.*  The medical personnel at the Jail provided Plaintiff with all of the medications that the MD had prescribed.  *Id.*, ¶ 25.

Some, but not all, sores or rashes require medical isolation.  *Id.*, ¶ 12.  During all times relevant to this lawsuit, it has been Defendant's policy that inmates with sores or rashes are housed in the general population unless the sores or rashes are infected, draining, or contagious.  *Id.*  Open wounds that are not infected are kept covered, and are treated by Defendant's personnel.  *Id.*  Open wounds that are infected and / or draining are cultured by medical personnel, to determine whether the wound is infected with staph or MRSA.  *Id.*  The cultures are sent to a medical laboratory, and appropriate antibiotic treatment is initiated.  *Id.*  Inmates diagnosed with active staph or MRSA infections are not housed with the general Jail population.  *Id.*  Any inmate with a draining wound is medically segregated from the general Jail population and assigned to the wound care clinic until the wound stops draining and is no longer infected.  *Id.*

An insect or spider bite may become an infected wound.  *Id.*, ¶ 13.  During all times relevant to this lawsuit, it has been Defendant's policy that if a bite becomes an infected wound, medical personnel will treat it in accordance with the procedures set out in Defendant's Policy Manual and the paragraph above.  *Id.*

5

During all times relevant to this lawsuit, it has been Defendant's policy that inmates in the Jail who are determined to be a serious suicide risk are placed on "suicide watch." *Id.*, ¶ 15. Those inmates are placed in a smock, and isolated in a secure cell which has been stripped of any items which might be used to cause themselves harm. *Id.* They are observed every five minutes by Jail personnel, who document their observations on a written form. *Id.* These inmates are immediately referred to a mental health provider. *Id.* Inmates are removed from suicide watch only when Defendant's personnel have deemed it safe to do so, and have authorized the removal. *Id.*

During all times relevant to this lawsuit, it has been Defendant's policy to provide lice treatment shampoo to inmates who are infected with head or body lice. *Id.*, ¶ 17. Until the inmates are deloused, they are put into medical isolation, and their clothing and bedding are disinfected. *Id.* Once the inmate is free of lice, he / she is returned to the general population. *Id.*

It is not medically necessary to quarantine inmates who are infected with Hepatitis A. *Id.*, ¶ 14. Defendant, therefore, does not medically isolate inmates with Hepatitis A. *Id.*

Defendant's personnel have never been responsible for pre-clearing or approving inmates for kitchen duty at the Jail. *Id.*, ¶ 19. However, if Jail personnel were to inquire about an inmates health in order to make a kitchen assignment, Defendant's medical staff would provide Jail administration with any such requested information. *Id.*

Defendant has not had practices or policies that violate Health Department Codes, or that allow Health Department codes to be violated. *Id.*, ¶ 20.

Plaintiff did not file any medical grievances concerning the medical care he received from Defendant's medical personnel at the Jail. *Id.*, ¶ 23.; Docket No. 41-3, Affidavit of

6

Custodian of Records, Sonya Troutt, ¶ 5.

The treatment provided to Plaintiff and other Jail inmates by Defendant's personnel was within the recognized standards of acceptable professional practice for nurses in the community of Sumner County, Tennessee. Sounder's Aff., ¶ 26.

No policy, practice, action, or inaction on the part of Defendant or its employees has proximately caused any injury to Plaintiff or to any other inmate at the Jail. *Id.* On no occasion has Plaintiff or any other inmate at the Jail been at risk of serious harm, nor have any of Defendant's medical personnel ever been indifferent to any complaint they have made. *Id.*

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on July 10, 2013. Docket No. 41. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the

7

> motion for summary judgment only; or (iii) demonstrating that the
> fact is disputed. Each disputed fact must be supported by a citation
> to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's
> statement of material facts, or a non-moving party's statement of
> additional facts, within the time periods provided by these Rules
> shall indicate that the asserted facts are not disputed for the
> purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Concise Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the
> movant simply because the adverse party has not responded. The
> Court is required, at a minimum, to examine the movant's Motion
> for Summary Judgment to ensure that he has discharged [his
> initial] burden ... The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

9

Plaintiff alleges general violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

**D. The Case at Bar**

As an initial matter, Plaintiff is unable to sustain his claim against Defendant, as the company that oversees the provision of Jail healthcare, because § 1983 does not permit the imposition of liability based upon *respondeat superior*, and it is undisputed that no policy or practice of Defendant caused Plaintiff injury. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

Moreover, Plaintiff is unable to sustain his claim against Defendant because he cannot establish that Defendant violated his constitutional rights. It is undisputed that no action or inaction of Defendant caused him injury, and that neither Defendant nor its employees were deliberately indifferent to any alleged serious medical need. It is further undisputed that Plaintiff had opportunities daily to request health care via the completion and submission of Sick Call Slips; that Plaintiff received medical attention in response to every Sick Call Slip he submitted, for every medical complaint he made; that Plaintiff received his medications as prescribed; and that the treatment Plaintiff received was within the recognized standards of acceptable medical professional practices in the community of Sumner County, Tennessee.

Inasmuch as Plaintiff claims that he filed his Complaint as a class action lawsuit (*see* Docket No. 1, p. 5), this action has not been so certified. Plaintiff has not alleged particularized personal injury and Plaintiff lacks standing to assert generalized claims regarding alleged violations of the constitutional rights of the other Jail inmates.

Because Plaintiff cannot establish Defendant violated his constitutional rights, Defendant is entitled to a judgment as a matter of law.

## IV. Conclusion

For the forgoing reasons, the undersigned finds that there is no genuine issue of material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

							_____
							E. CLIFTON KNOWLES
							United States Magistrate Judge

12

Case 3:12-cv-00990   Document 52   Filed 08/29/13   Page 12 of 12 PageID #: 357